UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE A. PUCCI,

        Plaintiff,        Case No. 07-10631
                                        Honorable David M. Lawson
v.

19TH DISTRICT COURT and CHIEF
JUDGE MARK W. SOMERS,

        Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS, DENYING DEFENDANTS' MOTION TO STRIKE FIRST MOTION FOR SANCTIONS, ANS DISMISSING DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT**

      The plaintiff, a former deputy court administrator in the Nineteenth District Court in Dearborn, Michigan, brought this action against that court and its chief judge alleging that she was fired as a result of unlawful discrimination and in retaliation for exercising her First Amendment rights. After a period of discovery, the defendants filed a motion for summary judgment. While the motion was pending, the parties agreed to submit the case to facilitative mediation by a privately-retained facilitator, and the Court entered an order setting forth the terms and procedures for mediation. Although the parties reached a tentative agreement, that settlement ultimately was rejected by the City of Dearborn, which is the Nineteenth District Court's funding unit and apparently has final settlement approval authority. The plaintiff filed a motion alleging that the defendants failed to follow the court-ordered mediation procedures because they did not secure the personal attendance of an individual with settlement authority at the mediation session and otherwise failed to participate in good faith. The plaintiff attached a copy of the proposed settlement

agreement to her motion, which was later withdrawn. The plaintiff now has renewed her motion for sanctions, and the defendants filed a motion for sanctions and to strike the image of the settlement agreement in the first motion from the electronic docket. The defendant also filed a third motion for summary judgment. The Court finds that it has no jurisdiction to entertain the latest summary judgment motion because the defendants filed a notice of appeal of the denial of the first summary judgment motion. However, the Court has jurisdiction to adjudicate the plaintiff's motion for sanctions and the defendants' motion to strike the exhibit. The Court finds that the defendants violated a key provision of the order for facilitation and the plaintiff therefore is entitled to recover her costs and attorney's fees expended on that procedure. The Court also finds no grounds to strike the exhibit from the public record. Therefore, the Court will dismiss the latest summary judgment motion for want of jurisdiction, grant the plaintiff's motion for sanctions, and deny the defendant's motion for sanctions and to strike the exhibit.

I.

The facts of this case are thoroughly recounted in the Court's opinion and order denying the defendants' first motion for summary judgment. To summarize, the plaintiff began her employment with the Nineteenth District Court in 1991 and through promotions became a deputy court administrator in 1998. In 2001, she began a romantic relationship with Judge Hultgren of that court. This relationship was opposed by Judge Somers, one of the other judges, leading to tension amongst the judges and between the plaintiff and Somers. The plaintiff was in line for promotion to the court administrator position upon the retirement of the incumbent, but Somers blocked that advancement. The plaintiff also had complained to one of the state's regional court administrators that Judge Somers sent religious messages on court stationery and was proselytizing from the bench. When

Judge Somers became chief judge, he eliminated the plaintiff's position and obtained from the Michigan Supreme Court a letter that states that the plaintiff should not become the court administrator. After the plaintiff's deputy court administrator position was eliminated and she was fired, she brought the present lawsuit. The Court has ruled previously that there was evidence sufficient to defeat summary judgment that Judge Somers caused the plaintiff to be discharged, the discharge was in retaliation for the plaintiff's complaints about a matter of public concern, and Judge Somers's reorganization plan was pretextual. The Court also ruled that, because the City of Dearborn (and not the State of Michigan) is the funding unit for the Nineteenth District Court and would be responsible for satisfying any judgment against the defendants, the defendants are not entitled to sovereign immunity.

Earlier in the litigation, after conferring with the Court, the parties agreed to submit their case to facilitative mediation. The Court has an established procedure implemented in the spirit of the Civil Justice Reform Act, *see* 28 U.S.C. § 473(b)(4), for litigants that choose that form of alternate dispute resolution. The parties recommended and the Court selected as their mediator Peter Houk, the former chief judge of the Ingham County Circuit Court, who is well respected and experienced in the conciliation process. The Court entered an order on January 22, 2008 that set forth the terms, conditions, and requirements of that process. One provision of the order directed the parties to share the mediator's fee equally. Another provision required the following:

> All parties or individuals with settlement authority are required to attend the facilitative mediation sessions. All parties are directed to attend all scheduled mediation session(s) with their respective counsel of record. Corporate parties must be represented by an agent with authority to negotiate a binding settlement.

Order [dkt. #29] at 1.

On March 4, 2008, the defendants filed their first motion for summary judgment. The next day, on March 5, 2008, the plaintiff, plaintiff's attorneys, defendant Mark Somers, and assistant attorney general Karen Kuchek attended the mediation session with Judge Houk. Kim Craig, the chief labor negotiator for the City of Dearborn, did not attend the facilitation despite a written request from Kuchek to do so. She reportedly was available by telephone. The facilitation lasted nearly eight hours, and a tentative settlement was reached and reduced to writing and signed by the parties present.

On March 12, 2008, the Dearborn city council held a closed session, and, according to the plaintiff, Kuchek was instructed not to attend. Instead, Kim Craig attended the session and, the plaintiff believes, recommended that the city council reject the settlement. The settlement was rejected. The plaintiff states that the city council has a policy not to accept a settlement before the dispositive motions have been decided by the court. The defendants have not disputed that allegation. This fact was revealed to the plaintiff only after the settlement was rejected.

On May 16, 2008, the plaintiff filed a motion for sanctions alleging that the defendants violated the Court's order for facilitative mediation by failing to bring a representative with settlement authority and failing to participate in the process in good faith. The plaintiff and her attorneys believe that the mediation session was an act of futility and a waste of time and expense, because the defendants had no intention of consummating a settlement. They attached a copy of the settlement letter as an exhibit to their motion. On May 29, 2008, the parties stipulated to withdraw their motion and strike it from the record. The Court dismissed the motion without prejudice, but did not alter the public record.

On July 10, 2008, the Court filed an opinion and order granting in part and denying in part the defendants' motion for summary judgment. On July 15, 2009, the plaintiff renewed her motion for sanctions. Joel Sklar, an attorney for the plaintiff, states that he spent fourteen hours related to the facilitation, as follows:

| | |
|---|---|
| Review conference with client: | 2.0 hours |
| Draft Facilitation Summary: | 1.5 hours |
| Attend Facilitative Mediation: | 8.0 hours |
| Travel to and from Lansing | 2.5 hours |

At $250/hour, Mr. Sklar's fees total $3,500. Sanford Plotkin, co-counsel for the plaintiff, spent twelve hours on the mediation:

| | |
|---|---|
| Review/Prep: | 1.5 hours |
| Attend session: | 8.0 hours |
| Travel to/from Lansing | 2.5 hours |

Mr. Plotkin's fees, at $250/hour, total $3,000. In addition, the plaintiff seeks to recoup their share of the fee paid to Mr. Houk in the amount of $900.

On August 5, 2008, the defendants filed a notice of appeal of the order denying the summary judgment motion. Later that month, the defendant filed two more motions for summary judgment, the latest of which remains pending. The defendants also filed a motion to strike the settlement agreement from the record. Defendant Somers submitted an affidavit where he states that a local news reporter spoke to him on October 9, 2008 and told him that the plaintiff informed the reporter that the parties had entered into a tentative settlement. He also says that in a debate with Candyce Ewing-Abbatt, a candidate running against Somers in the November election, Ewing-Abbatt referenced the settlement agreement, admitting that she had obtained the information from the docket.

The Court heard argument on the motions on November 5, 2008. There has been no action taken on the notice of appeal yet.

II.

The defendants' first summary judgment motion raised issues of sovereign and qualified immunity, which the Court rejected. As noted above, the defendants filed a notice of appeal from that decision. The filing of a notice of appeal from the denial of immunity generally divests the district court of jurisdiction. *Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994). However, if a district court certifies the appeal as frivolous, it retains jurisdiction. *Yates v. City of Cleveland*, 941 F.2d 444, 449 (6th Cir. 1991).

The defendants' appeal of the qualified immunity ruling is highly suspect, as any error "in finding a genuine issue of fact for trial is *not* the type of legal question which [the Court of Appeals] may entertain on an interlocutory basis." *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006); *see also Johnson v. Jones*, 515 U.S. 304, 313 (1995). The Court found that fact questions were material to the qualified immunity determination and summary judgment was precluded. The Court believes that the appeal of that determination is frivolous. However, the defendants also may appeal an adverse determination of sovereign immunity. *Kelly v. Great Seneca Financial Corp.*, 447 F.3d 944, 948 (6th Cir. 2006). On that issue, two other judges in this district have reached an outcome different than this Court in similar but distinguishable cases against state district courts, suggesting that an appeal is not frivolous. *Englar v. 41B Dist. Court*, 2006 WL 2726986 (E.D. Mich. Sept. 22, 2006); *Geller v. Washtenaw County*, 2005 WL 3556247 (E.D. Mich. Dec 29, 2005); *Smith v. Oakland County Circuit Court*, 344 F. Supp. 2d 1030, 1056 (E.D. Mich. 2004).

However, the Court's jurisdiction is only divested as to "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Consequently, "[t]he district court retains jurisdiction to resolve a motion for attorneys fees or sanctions even while an appeal of the merits is pending in the court of appeals." *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 156 (6th Cir. 1988), *superseded by Rule on other grounds as stated in Vance, by and through Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *6 (6th Cir. Jun. 25, 1999). The Court concludes, therefore, that it has jurisdiction to resolve the sanctions motions and the motion to strike. It has no jurisdiction to adjudicate the defendants' third motion for summary judgment, which will be dismissed.

III.

In her renewed motion for sanctions, the plaintiff argues that she participated in the settlement in good faith, but the defendant did not. The plaintiff contends that the defendant breached its obligations under the Court's order in three respects. First, Ms. Craig, the purported representative of the funding unit, was available by telephone, but the Court's order required personal attendance. Second, the plaintiff believes that Ms. Craig argued against the settlement to the city council. Third, the city council has a firm policy of not settling prior to resolution of dispositive motions.

The defendants argue against the sanctions motion, but also make some telling concessions in their response. The defendants point out that the City of Dearborn was dismissed from the lawsuit, so Kim Craig was not required to attend the session. But the defendants also concede, "Ms. Craig is an employee of the City of Dearborn, and has no authority to decide settlement proposals in this case." Def.s' Resp. at ¶ 4. They also acknowledge, "The Dearborn City Council is the sole

decision-maker for settlement agreements.  Accordingly, the terms of any proposed settlement are premised upon the approval of the Dearborn City Council." *Id.* at ¶ 5.  The assistant attorney general denies that she was told not to attend the city council session.

Congress has recognized that alternative dispute resolution (ADR) options are valuable tools that district courts may utilize to promote the speedy, just, and economical resolution of civil disputes. *See* Alternative Dispute Resolution Act of 1998, 28 U.S.C. §§ 651-658.  Among the recommended "litigation management and cost and delay reduction techniques" approved by Congress is "a neutral evaluation program for the presentation of the legal and factual basis of a case to a neutral court representative selected by the court at a nonbinding conference conducted early in the litigation." 28 U.S.C. § 473(b)(4).  Although the statutory authorization for such programs contemplates the use of the local rules process for implementation, the Court has the inherent power to order parties to mediate a case in appropriate circumstances even when the parties do not consent to such procedure.  *In re Atlantic Pipe Corp.*, 304 F.3d 135, 145 (1st Cir. 2002) ("[W] e hold that it is within a district court's inherent power to order non-consensual mediation in those cases in which that step seems reasonably likely to serve the interests of justice.").

This Court has adopted the practice of encouraging parties to consider the nonbinding process of facilitative mediation as a preferred form of ADR in civil cases.  Because that process carries with it some expense in time and mediator fees, the Court has put in place some ground rules intended to maximize the efficaciousness of the process and increase the likelihood of settlements.  For instance, the Court's order referring a case to mediation contains provisions for confidentiality to protect the discussions and the negotiation process, allowing the facilitator flexibility in the manner of conducting negotiations but prohibiting coercion, limiting communications by the

facilitator with the Court to reporting on the settlement if one is reached and reporting only the names of attendees if one is not reached, and allocating the payment of expenses.

Through the Court's own research and experience, the Court has determined that effectiveness declines if the decision-makers in a case do not personally attend the sessions. Although there is some disagreement with that premise, there is considerable supporting authority. *See* Julie Barker, *International Mediation-A Better Alternative for the Resolution of Commercial Disputes: Guidelines for a U.S. Negotiator Involved in an International Commercial Mediation with Mexicans,* 19 Loy. L.A. Int'l & Comp. L.J. 1, 31 (1996) (noting the role of nonverbal communication in settlement discussions); Joseph A. Torregrossa, *Appellate Mediation in the Third Circuit - Program Operations: Nuts, Bolts and Practice Tips*, 47 Vill. L. Rev. 1059, 1070 (2002) (stating that after serving as Third Circuit mediation director, his "experience suggests that in-person mediations are preferable and more productive"); *see also* First Circuit, Settlement Program, http://www.ca1.uscourts.gov/campgeninfo.htm (last visited March 5, 2009) (stating that "in-person conferences are preferred because experience demonstrates that in-person conferences are much more likely to produce positive results"); Shawn P. Davisson, Note, *Privatization and Self-Determination in the Circuits: Utilizing the Private Sector Within the Evolving Framework of Federal Appellate Mediation*, 21 Ohio St. J. on Disp. Resol. 953, 982 (2006) ("common sense would again dictate a justifiable presumption in favor of in-person mediation"); Robert J. Niemic, Mediation & Conference Programs in the Federal Courts of Appeals (Fed. Judicial Center 1997) (surveying the circuits and noting that "[p]roponents of in-person conferences maintain that face-to-face interactions between the parties may contribute to the settlement efforts"), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/mediconf.pdf/$File/mediconf.pdf. Therefore, the Court

also has included a requirement of in-person attendance by all of the parties to the case and "[a]ll parties or individuals with settlement authority," Order [dkt. #29] at 1, as a condition of participating in that form of ADR.

The defendants insist that they complied with this provision of the order since the City of Dearborn had been dismissed as a party to the case and they made suitable arrangements with a representative of the City of Dearborn to participate by telephone. The defendants point to a provision in Federal Rule of Civil Procedure 16 to support their claim that participation by telephone is sufficient. *See* Fed. R. Civ. Pro. 16(c)(1) (allowing the court to order attendance at a pretrial conference and stating, "[i]f appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement"). The problem with this argument is that it ignores the language of this Court's order.

In their response, the defendants admitted that its representatives in attendance did *not* have settlement authority, and the City of Dearborn was the entity that would pay any settlement. They also admit that the person with whom they were in telephone contact had no such authority. It is plain, therefore, that the defendants entirely disregarded this Court's order for them to have decision-makers present at the mediation session before Judge Houk. When coupled with the apparent policy that the City of Dearborn will not settle a case until dispositive motions are decided, the conclusion is unavoidable that the defendants did not participate in the mediation in good faith and the session ultimately was a waste of time and expense by the plaintiff.

When a party disobeys the pretrial orders of a federal court, the Federal Rules provide:

On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
(A) fails to appear at a scheduling or other pretrial conference;

> (B) is substantially unprepared to participate – or does not participate in good faith – in the conference; or
>
> (C) fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f)(1). The "just orders" authorized by Rule 37(b)(2)(A)(ii)-(vii) are:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). Under this rule, "[t]he district court has discretion to impose whichever sanction it feels appropriate under the circumstances." *Clarksville-Montgomery County School System v. U.S. Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991).

When applying the substantially similar Rule 37, the Sixth Circuit employs a four-factor test to determine whether a sanction (even one other than dismissal) is appropriate:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urban County Government*, 407 F.3d 755, 766 (6th Cir. 2005) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). The party seeking to avoid a sanction "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

The Sixth Circuit has affirmed the denial of a Rule 60(b)(6) motion made by an insurer who was subjected to default judgment as a sanction for not sending a representative to a settlement conference. *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 593 (6th Cir. 2006). The insurer in that case did not object to the magistrate judge's report and recommendation recommending entry of the default judgment, but did object to the denial of his Rule 60(b)(6) motion. The Sixth Circuit concluded that "the Magistrate's attempts to continue settlement proceedings were neither unusual nor extreme" and found no reason to reopen the judgment. *Id.* at 598. To the extent that the defendants argue that sanction is inappropriate due to wrongdoing on the part of their funding unit, this argument is undercut by *Frontier*. Other courts allow sanctions under Rule 16(f) when a party violates a Court's order to make available representatives with settlement authority. *See F.T.C. v. Freecom Communications, Inc.*, 401 F.3d 1192, 1208 n. 9 (10th Cir. 2005); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1396 (9th Cir. 1993) (affirming award of attorney's fees as sanctions against party who appeared without authority to settle, in contravention of Court order). Courts have noted the problem of government entities gaming the system and not sending appropriate authorities to settlement conferences. *See generally Schwartzman, Inc. v. ACF Industries, Inc.*, 167 F.R.D. 694 (D. N.M. 1996).

In this case, the plaintiff seeks a very modest sanction – an award of money damages to make her whole – to remedy the various misbehavior surrounding the mediation conference. The defendants' attendance at the settlement conference in violation of the Court's order constitutes sanctionable conduct. Here, the defendants have not offered anything to suggest that they were substantially justified in their noncompliance with the Court's order. An award of the "reasonable expenses - including attorney's fees - incurred" is appropriate. *See* Fed. R. Civ. P. 16(f)(2). The plaintiff's attorney's fees are reasonable: time spent in the conference plus a reasonable time preparing and commuting. Using the lodestar method and a rate of $250 per hour, which the Court finds as appropriate for the experience of the attorneys involved, the amount sought is justified. The plaintiff also will be reimbursed her portion of the facilitator's fee.

Applying the factors suggested in cases under Rule 37, the Court finds that the sanction sought is adequate. It is unclear whether the refusal to comply with the Court's order was willful or constitutes bad faith, but the burden is on the defendants to disprove any such showing, and they have not done so. The second factor favors an award of costs, as the plaintiff suffered prejudice in the form of attorney's fees and facilitator fees, but there is no allegation of any prejudice beyond that. The third factor does not favor a severe sanction as the parties were not explicitly warned (other than the general notice provided by the Rules) that noncompliance with the Court's order would create the risk of default judgment or other similar sanction. Finally, sanctions other than the most severe allowed are sufficient to remedy this misconduct. The plaintiff's motion for sanctions, therefore, will be granted.

IV.

The defendant argues that the first motion for sanctions and supporting exhibit should be stricken and removed from the record, and the plaintiff should be sanctioned for disclosing the tentative settlement. The defendants assert that the disclosure violated this Court's order referring the case to facilitative mediation, and they suffered prejudice because a candidate running against Judge Somers for that judgeship had access to the terms of the proposed settlement. The Court disagrees.

The confidentiality provision in this Court's facilitation order protects "information disclosed during the facilitative mediation session, including the conduct and demeanor of the parties and their counsel during the proceedings." Order at 2. It does not make confidential the terms of the settlements that are reached or the information that the session did not result in a settlement. The defendants also cite Federal Rule of Evidence 408 in support of their argument to strike the image of the motion exhibit. However, that rule only governs admissibility of evidence at trial; it does not support their position.

Perhaps the more serious aspect of the defendants' motion is the request to strike from the docket the image of the tentative settlement agreement involving the district court and Judge Somers. If the recent misadventures of Detroit's former mayor has taught anything, it is that the public is not served by the suppression of evidence of settlements in cases involving public bodies and officials. "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) ("The public has a strong interest in obtaining

-14-

the information contained in the court record."); *see also In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring in part and dissenting in part) (declaring that "[s]ealing court records . . . is a drastic step, and only the most compelling reasons should ever justify non-disclosure of judicial records"). This creates a "presumptive right" of open judicial records. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983). However, "trial courts have always been afforded the power to seal their records when interests of privacy outweigh the public's right to know." *Ibid.* In exercising its discretion to seal judicial records, the Court must balance the public's common law right of access against the interests favoring nondisclosure. *See Nixon*, 435 U.S. at 599, 602 (stating that Court must consider "relevant facts and circumstances of the particular case"); *Belo Broadcasting Corp. v.. Clark*, 654 F.2d 423, 434 (5th Cir. 1981); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (court has a duty to "balance the factors favoring secrecy against the common law presumption of access"); *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir. 1983) ("The historic presumption of access to judicial records must be considered in the balance of competing interests.").

"Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 476. Courts have been permitted to seal documents that could be "used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case," contain "reservoirs of libelous statements for press consumption," or contain "business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without

-15-

more, compel the court to seal its records." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

The information in this case is entirely factual. It is not particularly sensitive – it merely shows that an agreement was reached and the terms of the settlement. Even the facilitator's report was to contain information about whether the parties settled. The Court believes that the interest of the public in having access to the records of this case outweighs any conceivable interest of privacy that the defendants have in their rejected settlement agreement.

V.

The Court concludes that it has no jurisdiction to adjudicate the defendants' latest motion for summary judgment, the plaintiff is entitled to the payment of costs and attorney's fees to compensate her for the defendants' conduct in violating the facilitation order and frustrating the mediation process, and there is no basis to strike any filings from the docket in this case.

Accordingly, it is **ORDERED** that the defendants' third motion for summary judgment [dkt #54] is **DISMISSED** for want of jurisdiction.

It is further **ORDERED** that the plaintiff's renewed motion for sanctions [dkt #s 42, 44] is **GRANTED**. The defendants shall pay to the plaintiff the sum of $7,400 on or before **March 20, 2009**.

It is further **ORDERED** that the defendants' motion to strike and for sanctions [dkt # 58] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 6, 2009

-16-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 6, 2009.

s/Felicia M. Moses
FELICIA M. MOSES