UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE A PUCCI,

                Plaintiff,                              Case No.  07-10631
                                                         Honorable David M. Lawson

v.

CHIEF JUDGE MARK W. SOMERS, in his
individual capacity,

                Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT
AS A MATTER OF LAW, REMITTITUR, AND STAY, AND GRANTING IN PART
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND PREJUDGMENT INTEREST**

        Defendant Mark Somers has moved to set aside a jury verdict finding that he violated plaintiff Julie Pucci's federal constitutional rights, or, failing that, to reduce the damage award against him.  The plaintiff opposes the motion and seeks attorney's fees and costs under 42 U.S.C. § 1988 and prejudgment interest.  The Court heard argument on the motions in open court on December 13, 2011.  The Court now finds that a proper balance of the interests of the plaintiff and defendant under *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563 (1968), yields the conclusion that the plaintiff engaged in conduct protected by the First Amendment, and the defendant retaliated against her for engaging in that conduct.  The damage award is not excessive or beyond the range supported by the proofs.  The plaintiff is entitled to attorney's fees and costs, but not in the amount she claims.  And the defendant is not entitled to a stay of the judgment pending appeal without posting a supersedeas bond.  Therefore, the Court will deny the defendant's motion for judgment as a matter of law, stay, and remittitur, and grant in part and deny in part the plaintiff's motion for attorney's fees and prejudgment interest.

I.

The facts of the case are well known to the parties and have been recited in detail in previous opinions of this Court and the Sixth Circuit. *See Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 755-60 (6th Cir. 2010); *Pucci v. Nineteenth Dist. Court*, 565 F. Supp. 2d 792, 796-802 (E.D. Mich. 2008). After the case was remanded to this Court by the court of appeals, it was tried to a jury beginning June 22, 2011. The jury returned a verdict on June 30, 2011 finding that when the defendant fired the plaintiff from her job as deputy court administrator at the Nineteenth District Court in Dearborn, Michigan, he violated the plaintiff's right to procedural due process under the Fourteenth Amendment, and he retaliated against her in violation of the First Amendment. The jury assessed compensatory damages in the amount of $434,361 for economic loss and $100,000 for non-economic loss. The jury also assessed punitive damages of $100,000 for the violation of the plaintiff's right to due process of law, and $100,000 for retaliation in violation of the First Amendment. The jury found for the defendant on the plaintiff's claim of sex discrimination.

The Court submitted special interrogatories to the jury to decide fact issues that could relate to the *Pickering* balancing test the Court would apply later. The jury answered "Yes" to the question: Did the plaintiff's act of lodging a complaint about the defendant's use of religious references in the performance of his judicial duties cause, or could it have caused, disharmony in the workplace at the Nineteenth District Court? The jury answered "No" to the question: Did the plaintiff's activity of lodging a complaint about the defendant's use of religious references in the performance of his judicial duties impair the plaintiff's ability to perform her duties?

The Court entered judgment on June 30, 2011 in favor of the plaintiff and against the defendant in the amount of $734,361. On July 8, 2011, the defendant moved for relief from

judgment so he could file his motion for judgment as a matter of law.  The Court granted the defendant's motion for relief from judgment on October 24, 2011, suspending the judgment pending adjudication of the motion requesting relief under *Pickering*.  On July 13, 2011, the plaintiff moved for attorney's fees, and on July 14, 2011, the defendant moved for judgment as a matter of law, stay and remittitur.

## II.

The cornerstone of the defendant's argument in favor of a judgment as a matter of law and remittitur is that the plaintiff's First Amendment claim must be dismissed because her workplace complaints about Judge Somers proselytizing from the bench cannot be protected speech.  The defendant insists that even if the complaint raised a matter of public concern, the plaintiff's interest in speaking out on those issues did not outweigh her employer's interest in promoting an efficient workplace. The defendant then reasons that if the First Amendment claim is dismissed, then the proofs cannot support the compensatory damage award on the remaining procedural due process violation claim, so the judgment should be remitted to reflect only the punitive damage award on that claim.

Federal Rule of Civil Procedure 50(a) allows the Court to grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  The defendant in this case preserved his right to make such a motion after judgment by moving for such relief after presentation of all the evidence at trial and specifying the same grounds he raises here.  *See* Fed. R. Civ. P. 50(b); *Ford v. Cnty. of Grand*

*Traverse*, 535 F.3d 483, 492-93 (6th Cir. 2008); *Portage II v. Bryant Petrol. Corp.,* 899 F.2d 1514, 1522 (6th Cir. 1990).

The Seventh Amendment to the Constitution provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. Am. VII.  Therefore, in reviewing a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), the Court must give substantial deference to the jury's verdict. *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007).  "The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."  *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 598 (6th Cir. 2001) (citing *K & T Enters., Inc. v. Zurich Ins. Co.,* 97 F.3d 171, 174-76 (6th Cir. 1996)).  "Neither the district court nor the reviewing court may reweigh the evidence or assess the credibility of witnesses." *Radvansky*, 496 F.3d at 614 (citing *Gray*, 263 F.3d at 600).

The element of the First Amendment claim challenged by the defendant in the present motion is the plaintiff's protected conduct.  "To demonstrate First Amendment protection, a public employee must show (1) that the speech at issue addresses a matter of public concern, and (2) that the employer had no overriding state interest in efficient public service that would be undermined by the speech." *Silberstein v. City of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006) (citing *Pickering*, 391 U.S. at 568).   In the prior appeal of this case, the Sixth Circuit has already held that the complaints the plaintiff made touched on a matter of public concern.  *Pucci*, 628 F.3d at 768 (holding that "the nature of Pucci's complaints implicates the propriety and legality of public, in-court judicial conduct, and renders her speech of sufficient public gravity to warrant First

-4-

Amendment protection").  The defendant's argument focuses on the counterweight component of the balancing test — the overriding state interest in quashing the speech — which, he says, is supported by the jury's answers to the special interrogatories.

"Application of the *Pickering* balancing test is a matter of law for the court to decide." *Farhat v. Jopke,* 370 F.3d 580, 593 (6th Cir. 2004) (citing *Leary v. Daeschner,* 349 F.3d 888, 898 (6th Cir. 2003)).  However, "there may be some factual questions for a jury."  *Id.* at 589.  As the Eighth Circuit explained, "[a]lthough the court should resolve each of these questions as a matter of law, '[a]ny underlying factual disputes concerning whether the plaintiff's speech is protected . . . should be submitted to the jury through special interrogatories or special verdict forms.'" *Washington v. Normandy Fire Protection Dist.,* 328 F.3d 400, 404 (8th Cir. 2003) (quoting *Shands v. City of Kennet*, 993 F.2d 1337, 1342 (8th Cir. 1993)); *see also Bennis v. Gable,* 823 F.2d 723, 729 & n. 6 (3d Cir. 1987).  "For example, the jury should decide factual questions such as the nature and substance of the plaintiff's speech activity, and whether the speech created disharmony in the work place.  The trial court should then combine the jury's factual findings with its legal conclusions in determining whether the plaintiff's speech is protected."  *Shands v. City of Kennett,* 993 F.2d 1337, 1342-43 (8th Cir. 1993) (citations omitted).

The defendant reasons that it would have been appropriate to suppress the speech because Pucci's complaint caused or could have caused disruption in the workplace, as the jury found.  He asserts that the plaintiff's complaints were informal and private, the plaintiff became aware of the defendant's religious references through her role as deputy court administrator, and the relationship between the defendant and Judge Hultgren deteriorated after the defendant was told of the plaintiff's complaint about defendant Somer's conduct, causing a disruption in the workplace.  The defendant

insists that the Nineteenth District Court had a compelling interest in maintaining morale and the efficiency of public operations, as well as an interest in ensuring that judges operate effectively, and argues that those factors weigh in favor of finding that the plaintiff's speech was not protected.

The defendant relies heavily on two prior decisions in which the courts' *Pickering* balancing favored the public employer: *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004), and *Montle v. Westwood Heights Sch. Dist.*, 437 F. Supp. 2d 652, 653 (E.D. Mich. 2006). The facts of those cases, however, differ significantly from those in the present case. In *Farhat*, the plaintiff was fired from his job as a custodian for the school district after he wrote a series of letters to union and district officials complaining about discipline and warnings he had received for his obnoxious and confrontational behavior. In those letters, the plaintiff "routinely referred to others as 'sick and demented,' . . . 'mentally ill freak,' 'jack ass,' and similar terms." *Id.* at 584-85. The plaintiff called a fellow employee at work and told her, "When I get through with you, you won't be driving a bus or doing custodial work"; when he was suspended as a result of that statement, he sent a "vituperative" letter containing unspecific charges of corruption. *Id.* at 585-86. The court held that "the disruptiveness of his speech in the workplace outweighed any value his expression might have had." *Id.* at 593.

In *Montle*, the plaintiff was a teacher working in a school district that had no collective bargain with the teachers' union for a few years. The plaintiff was vocal in protesting the lack of a contract, and on certain Fridays he wore a bright green t-shirt to school and in class that read "Working Without a Contract" and confronted teachers who declined to wear the shirt. *Montle*, 437 F. Supp. 2d at 653. The plaintiff also "upbraided co-workers . . . and his confrontational behavior actually prompted complaints to the principal from other teachers." *Id*. at 656. In both cases, the

respective plaintiffs behaved in a confrontational manner prompting complaints and fear from other workers. None of that conduct occurred in the present case.

In contrast, here, the plaintiff's speech indisputably regarded matters of public concern and was made by approaching the State Court Administrator's Office. The "disruption" caused by the speech was a deterioration in the relationship between the defendant and Judge Hultgren — a relationship that the defendant admits was already troubled for different reasons — and an apparent decline in morale at the Nineteenth District Court. There was no evidence demonstrating that the plaintiff's coworkers felt threatened by the plaintiff's speech or that they complained about the speech. Nor is there any evidence to show that the plaintiff's speech was inflammatory, abusive, or insulting, or that the plaintiff engaged in confrontation with any of her coworkers. Although the jury made a finding that the plaintiff's speech did or could have caused disharmony at the Nineteenth District Court, the disruption — even as described by the defendant — was minimal: the disruption of an already troubled relationship between judges on the court and the accompanying morale problems at the court.

Although the jury found that the plaintiff's complaints caused "disharmony" in the workplace (not "disruption," as the defendant argues), the jury also found that those complaints did not interfere with the performance by the plaintiff of her job duties. The question, then, is whether the defendant's interest in reducing tension and disharmony in the workplace outweighed the plaintiff's interest in speaking out. The Sixth Circuit has struck that balance in favor of the right to speak out. *See Murphy v. Cockrell*, 505 F.3d 446, 453 (6th Cir. 2007). In that case, a public employee was terminated by an elected county property valuation administrator because the employee was campaigning to replace the administrator and called into question the administrator's

-7-

experience and party affiliation. The only negative impact of the employee's speech was the deterioration of her relationship with the administrator and resulting tension in the office. The court held that the political speech was protected under the First Amendment. The court stated that "it is impermissible to allow a superior to terminate an employee simply because tensions that did not impede the functions of the workplace arose over such protected speech." *Id.* at 453.

In addition, there are numerous cases in which courts have found that a public employee's right to speak outweighed the workplace disruption that the speech may have caused. In *Rodgers v. Banks*, 344 F.3d 587 (6th Cir. 2003), for instance, the court stated that it had "never held that the relatively minor associated risk of disharmony . . . would ordinarily overcome an interest in making sure a state hospital maintains its certification." *Id.* at 602. In that case, the court found it relevant that the plaintiff's speech was not "particularly inflammatory," did not contain "abusive language," and did not contain any "exceptionally insulting aspect." *Id.* at 601. In *Williams v. Commonwealth of Kentucky*, 24 F.3d 1526 (6th Cir. 1986), the Sixth Circuit held that although the plaintiff's reports of political patronage and other forms of corruption "did have the effect of creating disharmony between [the plaintiff] and the employees she reported, . . . no reasonable official could conclude that this interest outweighed Williams' interest in reporting these instances of political misconduct." *Id.* at 1537. The Court explained that "'when an employee exposes unscrupulous behavior in the workplace, his interests are co-extensive with those of his employer; both want the organization to function in a proper manner.'" *Ibid.* (quoting *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)). Finally, in *Leary v. Daeschner*, 228 F.3d 729 (6th 2000), the court found that although the defendant's "interest in performing its function efficiently was particularly strong," and "the

plaintiffs' speech was often conducted in a disruptive manner," the plaintiffs' interest in speaking

out on school administration trumped those concerns.  *Id*. at 738.

There is, perhaps, a small irony here, where the plaintiff invokes the First Amendment's

Speech Clause to protect her complaint about a violation of another clause in that Amendment, the

Establishment Clause, and defendant Somers's application of religious tenets in his judicial decision

making.  That conduct offended Pucci, and her complaint to the State Court Administrator about the

practice was an extraordinary communication that fell well outside her job responsibilities.  *See*

*Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006).  Her concerns placed her in good company.  *See*

*Arnett v. Jackson*, 393 F.3d 681, 691 (6th Cir. 2005) (Clay, J., dissenting) (observing that "[w]hen

. . . a judge directly and publicly relies on a religious source to reach a specific legal result, she flouts

a defendant's fundamental expectation that he will not be adjudged according to *any* religious tenets,

regardless of whether the sentencing judge herself adheres to those tenets. . . . Under this approach,

the judgments of trial courts could begin to resemble the fatwas of religious clerics, and the opinions

of appellate courts echo the proclamations of the Sanhedrin"); *North Carolina Civil Liberties Union*

*Legal Foundation v. Constangy*, 947 F.2d 1145, 1151 (4th Cir. 1991) (reiterating the rule that "the

government must pursue a course of complete neutrality toward religion" (quoting *Wallace v.*

*Jaffree*, 472 U.S. 38, 60 (1985)), and holding that "[t]his principle applies with even greater force

to the judicial branch because judges are sworn to be neutral arbiters and must apply the law

even-handedly without letting bias or personal feeling enter into the decision"); *United States v.*

*Bakker*, 925 F.2d 728, 740 (4th Cir. 1991) (vacating a sentence of a televangelist for fraud where

the sentencing judge referenced his religion, because "[c]ourts . . . cannot sanction sentencing

procedures that create the perception of the bench as a pulpit from which judges announce their

personal sense of religiosity and simultaneously punish defendants for offending it").   There is ample evidence to support the jury's finding that the plaintiff was speaking as a concerned citizen and not as part of her official duties.   The subject of her complaints enjoys a high level of importance.   "Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." *Marohnic*, 800 F.2d at 616.   In cases such as these, the Sixth Circuit has held that "an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning." *Leary*, 228 F.3d at 737-38.   In this case, the defendant has shown only that the plaintiff's speech caused disharmony in a workplace already ringing with sour notes.

The Court finds that the plaintiff's interest in speaking outweighed the defendant's interest in suppressing the speech.   The speech, therefore, was protected by the First Amendment. *Pickering*, 391 U.S. at 568.

III.

The defendant next asks that the Court reduce the amount of the jury verdict.   "As a general rule," the Sixth Circuit "has held that a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Am. Trim, L.L.C. v. Oracle Corp.,* 383 F.3d 462, 475 (6th Cir. 2004) (internal quotation marks omitted).   A district court has discretion to remit a compensatory damages "verdict only when, after reviewing all the evidence in the light most favorable to the prevailing party, it is convinced that the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the conscience of the court." *Ibid.*   "If there is any credible evidence to support a verdict, it should not be set aside." *Ibid.*

-10-

The Sixth Circuit clarified the "maximum damages that the jury reasonably find" standard in *Denhof v. City of Grand Rapids,* 494 F.3d 534, 547 (6th Cir. 2007). The court explained that "[a] court should not reduce an award unless it is: 1) beyond the range supported by proof; 2) so excessive as to shock the conscience; or 3) the result of mistake." *Ibid.* (citing *Bickel v. Korean Air Lines Co.,* 96 F.3d 151, 156 (6th Cir. 1996)).

The defendant first requests that the Court remit the damages awarded by the jury on the plaintiff's First Amendment retaliation claim on the assumption that the Court will find in favor of the defendant on his argument that the speech is not protected and the claim should be dismissed. However, the Court will not upset the jury's liability finding on that claim. The defendant also requests that the economic and non-economic damages granted by the jury be reduced to nominal damages. Here, too, the defendant's argument is premised on the assumption that the Court will find in his favor on his motion for judgment as a matter of law. The defendant contends that the full damage award cannot be sustained by the scant evidence of loss attributable to the procedural due process violation alone. However, the defendant has not argued that the plaintiff's First Amendment retaliation claim could not support the damages awarded by the jury, and he has not challenged the punitive damage awards on grounds that they are excessive or violate due process.

The Court finds that the proofs at trial support the jury's damage determination. "[T]he basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307 (1986) (citing *Carey v. Piphus,* 435 U.S. 247, 254 (1978) (internal quotation marks omitted)). "[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . ., personal humiliation, and mental anguish and suffering." *Ibid.* The

-11-

plaintiff offered evidence that supports the economic loss she encountered when she lost her job as the deputy court administrator and had to take a lesser-paying job with the City of Dearborn.  She also testified that the defendant dealt her a career-ending blow when he eliminated her job with the court, and she and other witnesses amply described the personal loss she has endured as a result. The Court does not find that the damage award is unsupported by the proofs, conscience-shocking, or the product of a mistake.

IV.

A.

The plaintiff has moved for attorney's fees and costs under 42 U.S.C. § 1988.  Section 1988 permits an award of attorney's fees to the prevailing party in a civil rights case.  *See* 42 U.S.C. § 1988(b).  However, the statute also states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."  *Ibid.*  Defendant Mark Somers plainly was a judicial officer, but his termination of the plaintiff and elimination of her job were actions taken in an administrative capacity, not a judicial one.  *Forrester v. White*, 484 U.S. 219, 229-30 (1988).

To be a prevailing party under section 1988, a party must receive "at least some relief on the merits of at least some of his claims."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603 (2001) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).  A party prevails in his lawsuit when there has been a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  *Texas State Teachers*

-12-

*Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792-93 (1989). That material alteration must affect the behavior of the defendant towards the plaintiff. *Rhodes v. Stewart,* 488 U.S. 1, 4 (1988).

A prevailing party has no right to attorney's fees under section 1988; the statute makes such awards discretionary. 42 U.S.C. § 1988(b) ("[T]he court, *in its discretion, may allow* the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ." (emphasis added)); *Day v. James Marine, Inc.*, 518 F.3d 411, 419 (6th Cir. 2008) ("Statutes like § 1988 make fees permissible, not mandatory. . . ."). Absent special circumstances, however, prevailing plaintiffs generally are awarded section 1988 fees as a matter of course. *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402.

The defendant does not dispute the plaintiff's prevailing party status, but he argues that the plaintiff cannot be found to have prevailed in full because some of her claims were dismissed before trial and the jury found in the defendant's favor on the plaintiff's sex discrimination claim. The defendant requests that the requested attorney's fee be reduced by one third in view of the fact that the plaintiff did not prevail on her sex discrimination claim. The defendant's argument on this issue is not well supported by prevailing authority. As the Sixth Circuit has explained,

> Work on an unsuccessful claim cannot be considered to have been "expended in pursuit of the ultimate result achieved" where the plaintiff has presented distinctly different claims for relief based on different facts and legal theories. But where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 552 (6th Cir. 2008) (citation and quotation marks omitted). Further, the Sixth Circuit has held that "a court should not reduce attorney fees

based on a simple ratio of successful claims to claims raised." *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (citing *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993)).

Although the plaintiff's claims were based on different constitutional and statutory violations by the defendant, all of the plaintiff's legal theories derived from the defendant's termination of the plaintiff; they arose from common facts and are related. The defendant's attempt to characterize the plaintiff's claims as unrelated is unpersuasive. The defendant argues inaccurately that the plaintiff's First Amendment retaliation claim related solely to the plaintiff's complaints of the defendant's misconduct without mentioning the fact that the plaintiff's claim was based on the defendant's termination of the plaintiff in retaliation for the plaintiff's complaints. The plaintiff indisputably prevailed at trial, and she established a violation of her constitutional rights. The verdict for the defendant on the sexual discrimination aspect of the case does not alter that conclusion.

Once the decision has been made to award section 1988 fees, the Court must decide what fee is "reasonable." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir. 2000). In determining a "reasonable" fee under section 1988, the court must first determine the "lodestar" amount (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly fee) and then reduce or augment that amount by considering other case-specific factors. *Hensley,* 461 U.S. at 433-37; *Imwalle,* 515 F.3d at 552; *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401-02 (6th Cir. 1995). The party seeking to recover fees bears the initial burden of substantiating the hours worked and the rate claimed. *Hensley,* 461 U.S. at 433; *Wooldridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1176 (6th Cir. 1990).

-14-

Generally, a reasonable hourly rate is calculated by reference to the prevailing market rates in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895 (1984). "The appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 618 (6th Cir. 2007). State Bar surveys of rates may be an appropriate guide, although they are not dispositive in establishing the market rate. *B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs,* 522 F.3d 657, 664 (6th Cir. 2008) (citing *Gonter,* 510 F.3d at 618 & n. 6 (referring to an Ohio State Bar Association survey of hourly billing rates "[a]s a point of reference")).

Attorney Joel Sklar requests an hourly rate of $400, and attorney Sanford Plotkin requests an hourly rate of $350. Both attorneys have been practicing law for twenty-six years, and both state that their requested rate is their customary hourly rate. Mr. Sklar contradicted that statement at oral argument, acknowledging that he generally does not charge by the hour, and the vast majority of his work is based on contingent fees.

The defendant points to the State Bar of Michigan 2010 economics of law practice summary report, which states that the median hourly litigation billing rate for Wayne County and downtown Detroit are $255 and $257. Def.'s Resp. to Mot. for Atty.'s Fees, Ex. A. The mean hourly litigation billing rates for attorneys in practice 25 to 29 years is $255. The mean hourly rate for attorneys in civil litigation is $255. The mean hourly rates for a firm the size of which Sklar operates is $227; it is unclear from the information provided by the parties what the size of Plotkin's firm is. The fees in this case were earned between 2008 and the present, so the survey provides relevant information that is useful in determining market rates.

-15-

The survey rates are lower than those sought by plaintiff's counsel, but as mean and median rates they serve as a guidepost against which to measure a reasonable rate "sufficient to encourage competent representation." *Gonter,* 510 F.3d at 618. Moreover, the plaintiff filed a motion for sanctions earlier in this case [dkt. #39] in which counsel requested an award of attorney's fees for time spent in an ultimately unsuccessful facilitative mediation. In the documentation submitted by the plaintiff, both Plotkin and Sklar requested fees at the rate of $250 per hour, alleging that rate was a reasonable one for their services. The Court found the requested rate reasonable and "appropriate for the experience of the attorneys involved" and awarded attorney's fees at that rate. *Pucci v. 19th Dist. Court*, No. 07-10631, 2009 WL 596196 at *7 (E.D. Mich. Mar. 6, 2009).

Certainly, hourly rates can change, and the plaintiff's suggestion of a reasonable rate earlier in the case does not irretrievably lock them in to that rate. However, the hourly rate suggested tracks the survey data, and nothing convincing has been presented that would justify the substantial increase counsel are advocating in their present motion. The Court finds, as before, that $250 is a reasonable hourly rate for both lawyers.

The number of hours reasonably expended on a matter includes time spent drafting and revising pleadings, meeting with clients, and preparing the case for trial. *Hensley,* 461 U.S. at 433-34. The court may reduce the hours claimed where the documentation is inadequate or the time was not "reasonably expended." *Mehney-Egan v. Mendoza,* 130 F.Supp.2d 884, 886 (E.D. Mich. 2001). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. 'A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.' Mich. R. Prof'l Conduct (MRPC) 1.5." *Ibid.* (citation omitted).

Attorney Sklar asserts that he has worked 1,222.5 hours, and attorney Plotkin asserts that he has worked 684.35 hours. They have submitted itemized time records, but they acknowledge that those records were reconstructed because neither kept contemporaneous billing records.

The defendant challenges the reasonableness of the hours expended on this case on several bases. The defendant criticizes plaintiff's counsels' charges for conferences and e-mails between the attorneys as well as for one attorney's revision of another's work, vague entries and block billing, and the practice of billing in fifteen minute increments for routine legal matters and e-mails. These criticisms are well-founded, as the billing statements submitted by the attorneys are often so vague as to make it difficult to determine the reason for the charges, and the bills contain many charges for routine matters such as filing appearances and e-mailing back and forth. It is difficult to discern from the billing statements how much time spent was duplicative. The Court has reviewed the billing records carefully and has eliminated duplicate and unnecessary charges. Those adjustments reduce attorney Sklar's hours to 1107.75, and attorney Plotkin's hours to 656.9.

In addition, the Court finds that some of the non-duplicative charges are excessive. For instance, attorney Sklar's billing statement includes 83 hours charged before the complaint was filed, 32.75 hours charged for preparing for the defendant's deposition, and 83.5 hours charged for preparing the brief on appeal. Similarly, attorney Plotkin's billing statement appears to include 36 hours billed for responding to the defendant's motions *in limine*. Some of that overbilling may have resulted from the difficulty reconstructing time records after the fact, and some might have been caused by spending more time on a task than can be found to be reasonable. Regardless of the cause, the Court believes that the total time charges should be reduced by an additional ten percent.

-17-

Therefore, the Court finds that the reasonable time charged by the plaintiff's attorneys is 1,588 hours. At $250 per hour, the lodestar fee amounts to $397,000.

There is a "strong presumption" that the lodestar represents the "reasonable" fee. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) (holding that lodestar figure has "become the guiding light of our fee-shifting jurisprudence"). The party advocating a departure from the lodestar amount bears the burden of establishing that the adjustment is "*necessary* to the determination of a reasonable fee." *Ibid.* In determining whether to adjust the lodestar amount, courts may consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3 (citing *Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).

The plaintiff argues that most of these factors apply. The Court cannot accept that argument in full, but it does find that three factors are particularly important and suggest that an upward departure from the lodestar is warranted in this case. First, the plaintiff represents that plaintiff's counsel was forced to turn away other cases because this case placed extraordinary demands on counsel's time. That claim is quite plausible, particularly for a small-firm practitioner called upon to litigate a complex constitutional case such as this. Second, this case has lasted for more than four years, and plaintiff's counsel has been active on the case for most of the period. The billing statements submitted demonstrate that the relationship between the plaintiff and plaintiff's counsel

was close, as plaintiff's counsel was in near constant communication with the plaintiff. The case required considerable attention, and it justified the attorneys' constant efforts. Third, and probably most importantly, the undesirability of this case weighs in favor of an upward adjustment to the lodestar. The plaintiff was suing a sitting chief judge in a local district court. That activity entails significant professional risk for attorneys who may practice in that court. The Court's objective is to establish a fee that is "sufficient to encourage competent representation." *Gonter,* 510 F.3d at 618. The Court finds that an enhancement to the lodestar of five percent is necessary to achieve that goal.

The Court will award the plaintiff an attorney's fee of $416,850.

### B.

The plaintiff seeks costs in the amount of $18,492.59. The defendant has not objected to any of the specific items on the list of costs except an for an expert witness fee for Dr. Robert Ancell. Costs may not be awarded under section 1988 unless the "action or proceeding [was] to enforce a provision of section 1981 or 1981a . . . title [42]." 42 U.S.C. § 1988(c). The plaintiff's claims were brought under section 1983, not the sections mentioned in the fee statute. Moreover, Dr. Ancell did not testify in the case.

As a general matter, " costs — other than attorney's fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The costs that are allowed in that rule are those allowed by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) ("[Section] 1920 defines the term 'costs' as used in Rule 54(d)."). The costs allowed under that statute are:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Local Rule 54.1 states:

A party seeking costs must file a bill of costs no later than 28 days after the entry of judgment. The clerk will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the court's web site.

E.D. Mich. LR 54.1. The plaintiff submit a list of her costs as part of her motion for attorney's fees filed thirteen days after the judgment was entered. The lists includes cost items not allowed by the statute. The cost list was not presented in the form prescribed by the Bill of Costs Handbook. That oversight is one of form, not substance, and can be corrected. The plaintiff may resubmit her bill of costs in the manner prescribed by LR 54.1 within seven days, and the Clerk may tax the proper costs of the action.

## C.

The plaintiff also argues that she is entitled to pre- and post-judgment interest from the date that the complaint was filed. The plaintiff asserts that pre-judgment interest accords with the remedial purpose of section 1983 and is often included in damage awards, and she contends that prejudgment interests is also permitted on attorney's fees and costs. The defendant argues that the plaintiff should not be awarded pre-judgment interest because she has already been made whole by

the judgment, and much of the delay in bring the case to a conclusion was caused by the plaintiff bringing claims barred by the Eleventh Amendment.

The plaintiff is entitled to post-judgment interest as a matter of course "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a).

"[I]n the absence of explicit statutory direction on the issue, the award of prejudgment interest is . . . in the discretion of the court. *Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999) (citing *Bricklayer's Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982)). "Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." *E.E.O.C. v. Kentucky State Police Dept.*, 80 F.3d 1086, 1097 (6th Cir. 1996) (internal quotation omitted).

The Sixth Circuit has found awards of prejudgment interest are "usually appropriate to make a discrimination plaintiff whole . . . . Discrimination victims should not be penalized for delays in the judicial process and discriminating employers should not benefit from such delays." *Thurman*, 90 F.3d at 1170. Although the plaintiff in this case did not prevail on a claim of employment discrimination and was not awarded back pay, the facts in this case are in some ways similar to an employment discrimination claim: the plaintiff was wrongfully terminated from employment in violation of her constitutional rights. The concerns animating the award of prejudgment interest in cases of employment discrimination therefore also apply in this case.

The defendant has not cited any authority that would suggest that an award of prejudgment interest is inappropriate in this case, instead making the conclusory argument that the plaintiff has

-21-

already been made whole by the jury's award of damages. The argument has some force, however, because at least a part of the jury's award of compensatory economic damages represented future wage loss. The Court believes that prejudgment interest is appropriate only to that part of the award attributable to back pay and non-economic loss. The plaintiff's economist expert witness presented evidence that the lost earnings differential from December 15, 2006 until December 31, 2010 was $92,281, and the differential for the first six months of 2011 can be calculated to equal $9,107. Based on the evidence presented at trial, the back pay damages would have been $101,388, and the non-economic loss was $100,000.

The plaintiff has requested that the prejudgment interest rate of 5.1%, which represents the weekly average 1-year constant maturity Treasury yield for the week prior to the filing of the complaint, for a total of $130,299.06. *See* 28 U.S.C. § 1961(a). At least one court has found that the prejudgment interest rate should be the same as the rate established for post-judgment interest. *See Dye v. Bellsouth Telecommunications, Inc.*, 462 F. Supp. 2d 845, 859 (W.D. Tenn. 2006). This Court agrees.

However, "[w]hile prejudgment interest should be awarded . . . it should be excluded for delays specifically attributable to the plaintiff." *Trurman*, 90 F.3d at 1170. The defendant argues that most of the delay was caused by the plaintiff's filing claims barred by the Eleventh Amendment or that could not be supported by the evidence. The Court disagrees. Considerable delay resulted from the interlocutory appeal taken by the defendant in which he was only partially successful, having failed to prevail on his qualified immunity argument. In any event, it cannot be said that any of the delay in this litigation was attributable specifically to the plaintiff.

The complaint in this case was filed February 12, 2007. Prejudgment interest in the amount of $21,914.30 will be awarded to the plaintiff.

V.

The defendant requests that the Court stay enforcement of the judgment pending appeal without requiring a bond. That is not the norm. A stay of a judgment usually requires a bond. Fed. R. Civ. P. 62(d). In fact, "Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right." *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). The reason supersedeas bonds generally are required is to level the balance of interests between a successful plaintiff and a defendant challenging the result in the lower court. As this Court has explained:

> [T]he Court is mindful of the rationale underlying the rule itself. The framework of Rule 62(d) represents a balancing of both parties' interests, in that it preserves the status quo while also protecting the appellee's rights. *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1190 (5th Cir. 1979). Rule 62(d) permits an appellant to obtain a stay "to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal." *Poplar Grove,* 600 F.2d at 1191. However, to preserve this right, the appellant must forego the use of the bond money during the appeal period.
>
> For the appellee, Rule 62(d) effectively deprives him of his right to enforce a valid judgment immediately. Consequently, the appellant is required to post the bond to provide both insurance and compensation to the appellee. The supersedeas bond protects the non-appealing party "from the risk of a later uncollectible judgment" and also "provides compensation for those injuries which can be said to be the natural and proximate result of the stay." *NLRB v. Westphal,* 859 F.2d 818, 819 (9th Cir. 1988), *Moore v. Townsend,* 577 F.2d 424, 427 (7th Cir. 1978) (*citing Weiner v. 222 East Chestnut St. Corp.,* 303 F.2d 630, 634 (7th Cir. 1962)). Therefore, Rule 62(d) establishes not only the appellant's right to a stay, but also the appellee's right to have a bond posted. Because of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required.

*Hamlin v. Charter Tp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998).

-23-

There are times, however, when a lesser bond or even no bond will be adequate to protect the appellee. In *Olympia Equipment Leasing Co. v. Western Union Tel. Co.*, 786 F.2d 794 (7th Cir. 1986), the Seventh Circuit affirmed a district order allowing alternate security to be posted when it stayed a large antitrust judgment. The court held that

> an inflexible requirement of a bond would be inappropriate in two sorts of case: where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and — the opposite case, one of increasing importance in an age of titanic damage judgments — where the requirement would put the defendant's other creditors in undue jeopardy.

*Olympia Equipment*, 786 F.2d at 796. *Olympia Equipment* was quoted favorably by the sixth circuit in *Arban v. West Pub. Corp.* 345 F.3d 390, 409 (6th Cir. 2003) (holding that Rule 62(d) "in no way necessarily implies that filing a bond is the only way to obtain a stay").

The defendant relied on the first ground for his argument that he should be relieved of the bond requirement. He says that the judgment against him will be satisfied by the Nineteenth District Court, which in turn would look to its local funding unit, the City of Dearborn. He reasons further that if the city does not satisfy the judgment, it may be enrolled on the tax assessment rolls for collection from the taxpayers. *See* Mich. Comp. Laws § 600.6093(1). The defendant contends, therefore, that the plaintiff will be secure and a bond is not needed.

The defendant's argument breaks down, however, when confronted with the demonstrated resistance by the City of Dearborn to acknowledge any responsibility for Judge Somers's conduct or the resulting liability for his constitutional violations. The more likely scenario is that Dearborn's obligation to pay the judgment will have to be litigated. In the meantime, the judgment will remain against the defendant in his individual capacity, and he has not demonstrated that his "ability to pay the judgment is so plain that the cost of the bond would be a waste of money."

-24-

The Court concludes, therefore, that the request to stay the judgment pending appeal without bond must be denied.

## VI.

After balancing the plaintiff's right to speak on a matter of public concern with the defendant's interest in suppressing the speech to maintain order in the workplace — a balance required by *Pickering v. Board of Education,* the Court finds that the plaintiff's speech interest prevails and her speech was protected by the First Amendment. The Court finds no good reason to reduce the amount of the verdict. The Court also concludes that the plaintiff is entitled to an award of attorney's fees, some prejudgment interest, and post-judgment interest; but her attorneys must resubmit a bill of costs in compliance with the local rule. The Court also finds that the defendant's request for a stay pending appeal without bond cannot be granted.

Accordingly, it is **ORDERED** that the defendant's motion for judgment as a matter of law, remittitur, and stay of judgment without bond [dkt. #107] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for attorney's fees, interest, and costs [dkt. #110] is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff is awarded attorney's fees in the amount of **$416,850.00**, and pre-judgment interest in the amount of **$21,914.30**. Post-judgment interest may accrue in accordance with 28 U.S.C. § 1961(a).

It is further **ORDERED** that the plaintiff may resubmit her bill of costs to the Clerk of the Court in accordance with E.D. Mich. LR 54.1. **on or before December 23, 2011**.

It is further **ORDERED** that an amended judgment will be entered by the Court.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 16, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 16, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---